**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WALTER GONZALO PEREZ PERELLO,<br>Petitioner,<br>vs.<br>JOHN MATTOS, *et al.*,<br>Respondents. | Case No.: 2:26-cv-02343-GMN-DJA<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

Pending before the Court is Petitioner Walter Gonzalo Perez Perello's First Amended Petition for Writ of Habeas Corpus, (ECF No. 7). Federal Respondents Michael Bernacke, David Venturella, Markwayne Mullin, and Todd Blanche filed a Response, (ECF No. 12), to which Petitioner filed a Reply, (ECF No. 13).

For the reasons discussed below, the Court GRANTS the First Amended Petition and orders Petitioner's immediate release.

## I. BACKGROUND

Petitioner, a citizen of Cuba, arrived in the United States in 2003. (First Am. Pet. 2:2, ECF No. 7); (*see also* I-213 at 2, Ex. 3 to First Am. Pet., ECF No. 8-3). He was granted admission into the country at that time and became a Legal Permanent Resident ("LPR") of the United States on December 2, 2004. (I-213 at 3, Ex. 3 to First Am. Pet.).

In 2023, Petitioner, having traveled out of the country, returned and applied for admission as a returning LPR. (*Id.*). However, Customs and Border Patrol discovered that he had several criminal convictions, so he was paroled into the U.S. and ordered to report for deferred inspection. (*Id.*). On August 5, 2025, he was ordered removed to Cuba. (*Id.*).

Meanwhile, Petitioner was convicted of several additional crimes in 2025 and 2026. (*Id.*). On July 24, 2026, he was released from state custody to the custody of Immigration and

Customs Enforcement ("ICE") and served with a Warrant of Removal on July 24, 2026. (*Id.* at 2–3); (*see also* Warrant of Removal, Ex. 2 to First Am. Pet., ECF No. 8-2). He has been detained ever since.

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Statutory Detention Scheme

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an Immigration Judge ("IJ"). 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

Meanwhile, the noncitizen is also entitled to seek various protections, including asylum, statutory withholding of removal, and Convention Against Torture ("CAT") protections. 8 C.F.R. § 1240.11(c)(1). Some of these protections are discretionary. *See e.g.*, 8 U.S.C. § 1158;

8 C.F.R § 208.2. Others are mandatory, meaning that protection must be given if the conditions are met. Withholding of removal is a mandatory form of protection preventing deportation to the country or countries where an IJ finds that the individual is more than likely to be persecuted. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16; *see also Moncrieffe v. Holder*, 569 U.S. 184, 187 n.1 (2013) ("[T]he Attorney General has no discretion to deny relief to a noncitizen who establishes his eligibility [for withholding of removal or CAT protections]."). CAT protection is a mandatory protection against deportation to a country where the IJ finds that the individual is likely to be tortured. *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024).

## III. DISCUSSION

Petitioner alleges that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) ICE's current policy and procedures relating to third-country removals violate the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment due process rights; and (3) Petitioner's detention under that policy violates his Fifth Amendment due process rights. (*See generally* First Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

### A. Petitioner's Detention Violates the Fifth Amendment

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**1. Rebuttable Presumption**

Federal Respondents argue that Petitioner cannot seek relief under Zadvydas because he has not yet been detained for six months. (Resp. 4:16–5:4, ECF No. 12). As another judge in this district has explained, *Zadvydas* adopted this six-month "presumption" to "guide lower court determinations." *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756, at *2 (D. Nev. Feb. 2, 2026) (quoting *Zadvydas*, 533 U.S. at 701). But that presumption did not create a bright line rule that would "automatically authorize all detention until it reaches constitutional limits." *See Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020). Indeed, in *Vijdani v. Mattos*, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209 (D. Nev. Feb. 27, 2026), this Court joined many other district courts and found that the six-month presumption in Zadvydas is rebuttable and does not foreclose claims challenging detention less than six months. The Court adopts its discussion of this issue in *Vijdani* here. *See Vidjani*, 2026 WL 560209, at *3–4.

Here, Petitioner's removal order became final on August 5, 2025. (I-213 at 3, Ex. 3 to First Am. Pet.). He was detained by ICE on August 24, 2026, over 90 days before the issuance of this Order. (*Id.* at 2). Therefore, Petitioner's 90-day-post removal period has passed, and if Petitioner can demonstrate that there is no significant likelihood of removal in the reasonably foreseeable future, he is eligible for release under supervision.

**2. Petitioner's Initial Burden**

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He puts forth evidence to support an initial finding that there is no significant likelihood of removal to Cuba in the reasonably foreseeable future.

Petitioner notes that DHS has been unable to remove other Cuban citizens to their home country. (First Am. Pet. 7:3–23); (*see also* Reply 3:6–22, ECF No. 13). In several other cases involving Cuban petitioners, the Court acknowledged evidence of Cuba's longstanding policy

to not accept Cuban nationals with final orders of removal, particularly those with criminal convictions. *See, e.g.*, *Sanchez Alberte v. Bondi*, No. 2:26-cv-01699-GMN-EJY, 2026 WL 3181255, at *3 (D. Nev. Oct. 22, 2026); *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026); *see also Veiga v. Bondi*, No. 2:25-cv-02168-TMC, 2025 WL 3526067, at *1 (W.D. Wash. Dec. 9, 2025) (noting 34,000 Cubans with final orders of removal in the United States). Nothing in the record suggests to the Court that Petitioner's case is an exception. Respondents' inability to effectuate removal to Cuba in the 15 months since he was issued a final order of removal further supports Petitioner's claim that removal is not significantly likely in the reasonably foreseeable future. *See, e.g.*, *Zakeri v. Dep't of Just.*, No. 2:25-cv-3187 AC, 2026 WL 1031034, at *7 (E.D. Cal. Apr. 16, 2026) (reaching the same conclusion based on an 18-month period since the removal order became final).

Accordingly, the Court finds that Petitioner has met his initial burden under *Zadvydas*.

**2. Respondents' Burden**

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents claim that "there are current efforts to lawfully remove Petitioner to Cuba" and that ICE "is currently coordinating with the Cuban consulate to effectuate this removal." (Resp. 4:19–23). However, Respondents submit no evidence of their assertions—*e.g.*, travel documents or communications with Cuban officials—even though Petitioner's order of removal became final in August 2025, over a year Respondents filed their Response. *See, e.g.*, *Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *4 (D. Nev. Apr. 22, 2026) (listing types of evidence that respondents could produce to meet their burden). Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*,

448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025).

Respondents' bare assertions that removal attempts are ongoing cannot satisfy their burden under *Zadvydas*. Accordingly, Respondents fail to rebut Petitioner's showing, and Petitioner is entitled to habeas relief under the Fifth Amendment.

**B. Petitioner Is Entitled to Due Process Before Removal to a Third Country**

Petitioner also challenges his potential removal to a third country without constitutionally adequate procedures. (*See generally* First Am. Pet.). He argues that, to the extent his detention is meant to facilitate his removal to a third country, that detention is unlawful because ICE's procedure for third country removal would violate his due process rights. (*Id.* 13:9–15). Although Respondents claim "[t]here are no contemplated efforts to effectuate a lawful removal [to] Mexico at this time," (Resp. 4:21–22), Petitioner argues that "it is a very real possibility" because ICE has attempted to remove similarly situated Cuban citizens to Mexico. (Reply 5:1–3).

Although Respondents assert that "there are current efforts to lawfully remove Petitioner to Cuba," (Resp. 4:19–23), there is no evidence in the record indicating what those efforts are or how they would be more successful than the many failed attempts to remove other Cuban citizens. Similarly situated Cuban citizens—who, like Petitioner, were ordered removed to Cuba but were previously convicted of crimes in the United States—have filed habeas petitions before this Court to challenge ICE's plans to remove them to Mexico. *See, e.g.*, *Sanchez Alberte*, 2026 WL 3181255, at *3–4; *Perez Canet*, 2026 WL 1091763, at *4–5.

The Court therefore finds that Petitioner's fear that ICE will seek to remove him to a third country is not speculative, and he has Article III standing to make this claim. *See, e.g.*, *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025) ("The Court is satisfied that, as a noncitizen with a removal order—who is, therefore,

inherently subject to [DHS's policy of third country removal with minimal notice]—Petitioner has sufficiently demonstrated 'that he is realistically threatened by a repetition of the violation' at issue." (quoting *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012)).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (mem.). Accordingly, the Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country, if it attempts to do so.[1]

**C. Scope of Relief**

First, Petitioner requests that he be released immediately. (First Am. Pet. 14:2). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–

[1] Because the Court finds that Petitioner puts forth a successful due process argument under *Zadvydas*, it need not determine whether the third-country deportation policy violates the APA.

700. It further provides that the noncitizen's "release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[2] *See Zadvydas*, 533 U.S. at 699–700.

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (First Am. Pet. 14:3–12). For the reasons discussed above, the Court grants this requested relief.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition, (ECF No. 7), is **GRANTED**.

---

[2] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
> (A) to appear before an immigration officer periodically for identification;
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **November 3, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Determining reasonable terms of supervision shall not in any way impede the immediate release of Petitioner.

**IT IS FURTHER ORDERED** that Respondents must return Petitioner's personal property upon his release.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **November 4, 2026,** to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this 2 day of November, 2026.

________________________________
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT